645 A.2d 313

### In re PRIVATE ROAD IN EAST ROCKHILL TOWNSHIP, BUCKS COUNTY, Pennsylvania.

Appeal of John HENNING and Debra Henning, his wife, to open Private Road

v.

Richard J. WATANABE and Linda A. Watanabe, his wife, and Ida Ellen Weinstock and Richard R.J. Freed.

Appeal of Richard J. WATANABE and Linda A. Watanabe, Appellants.

Commonwealth Court of Pennsylvania.

Argued May 9, 1994.

Decided June 21, 1994.

Petition for Allowance of Appeal Denied Dec. 1, 1994.

Stephen B. Harris, for appellants.

Edward M. Wild, for appellees.

Before PELLEGRINI and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

Richard J. Watanabe and Linda A. Watanabe (Watanabe) appeal the decision of the Court of Common Pleas of Bucks County (trial court) affirming the recommendation of a Board of Views laying out a private road across the Watanabes' property pursuant to the Act of June 13, 1836, P.L. 551, *as amended,* 36 P.S. §§ 2731–2891, commonly known as the Private Road Act (Act).

Watanabe and Ida E. Weinstock own adjacent properties in Bucks County. Weinstock's property borders Route 313 and Watanabe uses an old stone driveway across Weinstock's property to reach their residence. Behind these properties are a number of "woodlots"[1] which the parties agree are landlocked, that is, have no means of access to a highway. John Henning and Debra Henning, the owners of one of the woodlots, filed a petition under Section 11 of the Act, 36 P.S. § 2731, requesting that a Board of Views be appointed to lay out a private road to their lot. Richard R.J. Freed, another woodlot owner, intervened as a petitioner seeking access to his property. Hennings proposed using the stone driveway that crossed the Weinstock property from Route 313, continuing past the Watanabe residence. The driveway becomes a dirt path once it passes the Watanabe residence which was apparently used by telephone company vehicles to access a right-of-way in the woodlots.

The statutory basis for the request to open a private road is Section 11 of the Act, 36 P.S. § 2731, which provides:

The several courts of quarter sessions shall, in open court as aforesaid, upon the petition of one or more persons, . . . for a road from their respective lands or leaseholds to a highway or place of necessary public resort, or to any private way leading to a highway, . . . direct a view to be had of the place where such road is requested and a report thereof to be made. . . .

Additionally, Section 12 of the Act, 36 P.S. § 2732, provides:

---

1. A woodlot is a common term for undeveloped private property usually used only as a source of lumber or firewood.

If it shall appear by the report of viewers to the court directing the view, that such road is necessary, the said court shall direct what breadth the road so reported shall be opened, and the proceedings in such cases shall be entered on record, as before directed, and thenceforth such road shall be deemed and taken to be a lawful private road.

The Board of Views was appointed and a view of the property and hearings were conducted. The viewing of the properties established that the old driveway was passable by automobiles and trucks and was quite close to the Henning and Freed woodlots. Both Richard Holler and James Leister, engineers hired by the petitioners, testified that the existing driveway was superior to other ways because of the existing roadbed. David Downs, a surveyor presented by Watanabe, had not made a physical survey of the problems but testified about the elevations of the properties. Downs proposed alternate routes such as one he called the "northern" route which would cross Weinstock's property north of the driveway and residence and one of the property lines. On cross-examination, Downs admitted that he did not know how many trees or boulders would be encountered on those routes and had not walked the entire distance. Leister, for petitioners, also testified that the more northern routes were in a wetland area and boulders impeded those routes.

The Board filed a report with the trial court recommending, as requested by Henning, that a private road be laid out on the existing stone driveway and on the existing dirt path breaking off at the Henning and Freed properties. Watanabe filed post-trial motions [2] contending that the statute was unconstitutional and the Board abused its discretion in failing to make necessary findings of fact.

The trial court denied the post-trial motions and confirmed the Board's recommendation, holding that the statute does not authorize the taking of private property for private

2. However, while denominated post-trial motions, they were actually exceptions to the Viewers' Report. *See Hunter's Private Road*, 46 Pa. 250 (1864).

uses but is a constitutional use of the eminent domain power. The trial court also held that the statute does not deprive landowners of procedural due process. Finally, the trial court held that the Board considered all the statutory factors and picked the appropriate route because, although it is the longest route, it requires the least construction and follows an existing roadbed. Watanabe then filed this appeal.[3]

■ Watanabe challenges the taking for both constitutional and substantive reasons. He first relies on the Pennsylvania Constitution, Article I, Section 10,[4] contending that the Act is unconstitutional because it provides taking of private property for purely private use. Rejecting the argument that taking for a private road violates the Pennsylvania Constitution, in *Waddell's Appeal*, 84 Pa. 90, 93–94 (1877), our Supreme Court stated:

> The right of the legislature to establish private roads over the land of one man for the benefit of another, for the purpose of access to highways or places of necessary public resort, or even to private ways leading to highways, has never been seriously doubted in Pennsylvania. . . . [I]t is the connection of these private ways with public highways, or with places of necessary public resort, together with the implied right or license of the public to use them, at least in going to and from the premises of the person laying them out, quite as much, if not more, as the consideration of purely individual rights, that have won for these acts judicial recognition of constitutionality.

*See also Marinclin v. Urling*, 262 F.Supp. 733 (W.D.Pa.1967),

**3.** Appellate review of a trial court's decision regarding a Board of Views opening a private road is limited to ascertaining the validity of the court's jurisdiction, the regularity of the proceedings, questions of law and whether there has been an abuse of discretion. *In re Private Road in Greene Township*, 343 Pa.Superior Ct. 304, 494 A.2d 859 (1985).

**4.** Article I, Section 10 of the Pennsylvania Constitution provides:
[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured.

*affirmed,* 384 F.2d 872 (3d Cir.1967);[5] *In re Dickinson Township Road,* 23 Pa.Superior Ct. 37 (1903). Based on the reasoning stated in these cases that establishing roads to open landlocked property has public as well as private uses, the Act is not unconstitutional and there is no need to further address a long-decided issue.[6]

■ Watanabe also contends that the Act is unconstitutional because it fails to provide adequate procedural due process protections for the land owners, such as the failure to provide a *de novo* hearing before the trial court, an opportunity for a jury trial, a requirement that the property owners' desires be considered, adequate standards for qualifications of the members of the Board of Views, or the posting of a bond. They cite the Superior Court's decision in *In re Laying Out and Opening a Private Road, Appeal of Zeafla,* 405 Pa.Superior Ct. 298, 592 A.2d 343 (1991). While that case did not address the constitutionality directly, it questioned the adequacy of the

5. The federal district court relied on the reasoning in *Waddell* and continued:

> In addition, the use of a road laid out as a way of necessity could very well be deemed a public use since it is for the public benefit that every citizen should have the means of discharging his public duties, such as voting or attending court as a juror or witness, and because it affords higher assessments upon the landlocked property for municipal tax purposes. Also, it is in the public interest that police, firemen, and representatives of other public health, welfare and municipal agencies have access to the dwelling.

*Marinclin,* 262 F.Supp. at 736.

6. Watanabe suggests that more recent U.S. Supreme Court and Pennsylvania cases open up the area of taking to more constitutional scrutiny, citing, for example, *Nollan v. California Coastal Commission,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) and *Board of Supervisors of West Marlborough Township v. Fiechter,* 129 Pa.Commonwealth Ct. 537, 566 A.2d 370 (1989). In *Nollan* and *Fiechter,* a government entity required that a public easement or dedication of private property be given without compensation as a condition for regulatory approval. Those cases held that requiring a private party to give up its property for public use without resort to the taking procedures which requires just compensation would violate constitutional principles. *See Nollan* 483 U.S. at 831, 107 S.Ct. at 3145; *Fiechter* 129 Pa.Cmwlth.Ct. at 543–44, 566 A.2d at 373. In this case, the Act provides for a taking for a public use with just compensation, and there is nothing within the cases cited by Watanabe to require a new examination of significant precedent.

due process protection provided by the Act in comparison with those in the Eminent Domain Code.[7] However, we directly addressed the issue in *T.L.C. Services, Inc. v. Kamin,* 162 Pa.Commonwealth Ct. 547, 639 A.2d 926 (1994). In *T.L.C.,* as in this case, property owners on whose land a private road was laid out contended that the Act was unconstitutional because it did not provide sufficient procedural due process protections, including those protections provided in proceedings under the Eminent Domain Code. This court held, relying on *Palairet's Appeal,* 67 Pa. 479 (1871) and *Pocopson Road,* 16 Pa. 15 (1851), that the Act is constitutional, and stated that any alleged inequity between landowners in private road cases and landowners in eminent domain cases is better addressed by the legislature.[8]

Finally, Watanabe contends that the Board erred in not making specific findings on whether the proposed route is the shortest distance, over the best ground or caused the least injury to the parties in comparison to the possible routes they proposed. Watanabe argued to the Board that a straight line east from the Hennings' property through the Freed and Weinstock properties may be shorter to Route 313 without imposing on their property.

■■■■ Section 12 of the Act requires that the Board decide whether there is a necessity for the opening of a private road. The determination of the necessity for a road is ordinarily a factual matter determined by a viewing of the property and hearings, if necessary, by the Board. *In re Private Road in Greene Township,* 343 Pa.Superior Ct. at 308, 494 A.2d at 861.[9] An example of "strictest necessity" is where a parcel of

7. Act of June 2, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101—1–903.

8. Although the property owners in *T.L.C.* only specifically addressed the lack of a requirement for the posting of a bond by the condemnor, they did raise all the protections under the Eminent Domain Code that are not provided in the Act. These are the same protections raised by Watanabe in this case.

9. The Board of Views has broad authority to determine whether the private road is necessary in a proceeding to open a private road, and the trial court is limited to confirmation of the report of the Board or

land is completely landlocked. *Appeal of Zeafla,* 405 Pa.Superior Ct. at 304, 592 A.2d at 346 (citing *In re Private Road in Greene Township* ). In *Appeal of Zeafla,* the Superior Court held that just because the private road could run across another person's private property does not mean that the road is not "necessary" in accordance with Section 12 of the Act.

 Section 2 of the Act, 36 P.S. § 1785 (incorporated into the Act by Section 11), delineates guidelines for the Board's decision:

The persons appointed as aforesaid, shall view such ground, and if they shall agree that there is occasion for a road, they shall proceed to lay out the same, having respect to the shortest distance, and the best ground for a road, and in such manner as shall do the least injury to private property, and also be, as far as practicable, agreeable to the desire of the petitioners.

The trial court found that the Board did consider all the factors in determining whether the road should be opened as petitioned for by Hennings. After a review of the Board's report, it appears that although listed as conclusions of law, the Board did make specific findings of fact that the properties were landlocked and, therefore, a private road was necessary, and "having taken into account all the necessary elements relevant" that the road should be opened as requested by Hennings. The report also reviews all of the evidence presented by Watanabe that other roads were possible and that the proposed road was not the best route. Although perhaps more specific findings as to the factors listed in Section 2 of the Act would be helpful, they are not necessary so long as it is apparent that the Board considered those factors in its decision. From reading the decision, it is clear that the Board recognized that the adopted route was not the shortest distance, but it was appropriate because it was an established roadbed and its use required significantly less

rejection of it and the direction of a review. *In re Private Road in Greene Township,* 343 Pa.Superior Ct. at 307, 494 A.2d at 860–61 (citation omitted).

construction or maintenance and caused the least harm to all the properties.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 21st day of June, 1994, the order of the Court of Common Pleas of Bucks County dated June 3, 1993, No. 28 M.R. 1988(18), is affirmed.