836 A.2d 102

**In re Interest of Robert W. FORRESTER,**

**Appeal of Rodney J. McKenrick, Bonnie F. McKenrick, Harold S. Forrester, and Helen B. Forrester.**

**No. 161 MAP 2001.**

Supreme Court of Pennsylvania.

Argued May 15, 2002.

Decided Nov. 20, 2003.

Thomas J. Finucane, Chambersburg, for appellants Rodney J. and Bonnie F. McKenrick, Harold S. and Helen B. Forrester.

Joseph Keith Goldberg, Harrisburg, for appellee Robert W. Forrester.

Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Chief Justice CAPPY.

The issue with which we are presented today is whether the Commonwealth Court erred in determining that there is no requirement that the Agricultural Lands Condemnation Approval Board ("ALCAB") must approve of the opening of a private road under the law commonly known as the Private Road Act ("Act"), 36 P.S. § 2731 *et seq.*, when that road is in

an Agricultural Security Area ("ASA"). For the following reasons, we affirm.

Robert W. Forrester ("Appellee") owns a twenty-acre tract of land in Franklin County that is landlocked. Appellee filed a petition under the Act requesting that a Board of View ("Board") be appointed pursuant to 36 P.S. § 2731 to locate and open a private road from his landlocked property over farmland owned by Rodney J. McKenrick, Bonnie F. McKenrick, Harold S. Forrester, and Helen B. Forrester (collectively, "Appellants"). As Appellants' land is located in an ASA as defined by the Agricultural Area Security Law, 3 P.S. § 901 *et seq.*, Appellants argued that a private road may not be opened without the prior approval of ALCAB.

The Board filed a report with the court of common pleas. It rejected Appellants' argument that the private road could not be opened without prior approval from ALCAB. It proceeded to find that Appellee had established the necessity sufficient to entitle him to have a private road opened so that he could access his landlocked property. The Board fixed the location of the private road, and assessed damages against Appellee in the amount of $ 11,325.00. The trial court affirmed the Board's report.

On appeal, the Commonwealth Court affirmed, finding that no approval was needed from ALCAB prior to the opening of the private road pursuant to the Act.

Appellants filed a petition for allowance of appeal with this court. We granted allocatur, limited to the question of whether ALCAB needed to grant approval prior to the opening of a private road on land within an ASA. As this question is purely one of law, our review is *de novo. Buffalo Twp. v. Jones,* 571 Pa. 637, 813 A.2d 659, 664 n. 4 (2002).

Appellants argue that the Commonwealth Court erred in determining that approval from ALCAB did not need to be obtained prior to the opening of a private road across their land. They note that the Agricultural Area Security Law states that no agency of the Commonwealth, political subdivision, authority, public utility or other body "having or exercis-

ing powers of eminent domain shall condemn" any land within an ASA unless prior approval has been obtained from AL-CAB. 3 P.S. § 913(a) and (b). Appellants contend that the opening of a private road pursuant to the Act constitutes an exercise of eminent domain by a governmental or other body within the meaning of § 913 of the Agricultural Area Security Law. Thus, they argue, a private road could not be opened on their land, which is located within an ASA, unless Appellee had first obtained approval of ALCAB.

Appellants commence their argument that § 913 applies to this matter with the proposition that the opening of a private road pursuant to the Act constitutes an exercise of the powers of eminent domain. In making this argument, Appellants concede that proceedings under the Act are not controlled by the Eminent Domain Code ("Code"), 26 P.S. § 1–101 *et seq.*[1] Yet, a determination that proceedings under the Act are not controlled by the Code does not provide a definitive answer to this issue. Section 913 of the Agricultural Area Security Law speaks in terms of eminent domain powers, and does not limit the definition of such powers to those enumerated in the Code. Thus, we must determine whether the opening of a private road is an exercise of eminent domain.

■ It is axiomatic that the state exercises its powers of eminent domain when it takes property for a "public use". *Balent v. City of Wilkes–Barre,* 542 Pa. 555, 669 A.2d 309, 314 (1995). Appellants contend that this court has long recognized that the opening of a private road serves a public use or purpose; thus, they conclude, the opening of a private road constitutes an exercise of eminent domain. In support of their position, they cite to *Waddell's Appeal,* 84 Pa. 90 (Pa.1877). They contend that this court in *Waddell's Appeal* declared that the opening of a private road did not authorize the taking of private property for private use; rather, this court ostensibly concluded that such a taking confers benefits on the public

1. This concession appears to be a correct one as the comment to Section 511 of the Code, 26 P.S. § 1–511, specifically states that the Act is not "repealed or affected" by the Code.

at large. Appellants' brief at 13 (quoting *Waddell's Appeal,* 84 Pa. at 93–94).

Unfortunately, the language cited by Appellants was not written by this court, but rather was penned by the trial court in that matter;[2] there is no indication that this court adopted such language. Thus, *Waddell's Appeal* does not provide the irrefutable support for Appellants' position that they had concluded it did.

Furthermore, *Waddell's Appeal* did not concern a challenge to the opening of a private road pursuant to the Act. Rather, the controversy involved the Act of 13th of June 1874, P.L. 286, granting right-of-ways for the mining of anthracite coal. Thus, any mention of the Act was *dicta.*

Our own review of the case law reveals that this court has on several occasions discussed whether the opening of a private road pursuant to the Act effectuated a public purpose. Unfortunately, the vast majority of these statements were *obiter dicta. See, e.g., In re Legislative Route 62214, Section 1–A,* 425 Pa. 349, 229 A.2d 1 (1967); *Philadelphia Clay Co. v. York Clay Co.,* 241 Pa. 305, 88 A. 487 (1913); *Palairet's Appeal,* 67 Pa. 479 (1871).

We have discovered only one instance in which this court was squarely presented with the issue of whether the opening of a private road effectuated a public purpose. In *Pocopson Road,* 16 Pa. 15 (1851), one of the litigants argued that the opening of a private road pursuant to the Act constituted a taking for a purely private use. While we denied relief on this claim, our resolution of the issue was wholly unsupported by any reasoning. In a single sentence, we stated that this claim and several others lacked "an appearance of substance". *Id.* at 17. We are leery of resting our disposition of the issue of whether the opening of a private road pursuant to the Act constitutes a public purpose on so insubstantial of a foundation as *Pocopson Road.* Instead, we will conduct our analysis of

**2.** Appellants' mistaken attribution of this language to our court, rather than to the trial court, in that matter is unfortunate but understandable. The form of opinions predating the turn of the 20th century are at times baffling to our modern sensibilities.

this issue independent of any holding issued by the *Pocopson Road* court.

As noted *supra*, the state exercises its powers of eminent domain when it takes property for a "public use". *Balent, supra.* We have not, however, required that the taking confer only public benefits. We have explained that a taking does not "lose its public character merely because there may exist in the operation some feature of private gain, for if the public good is enhanced it is immaterial that a private interest may also be benefited." *Belovsky v. Redevelopment Authority of Philadelphia*, 357 Pa. 329, 54 A.2d 277, 283 (1947). Yet, a taking will be seen as having a public purpose only where "the public is to be the primary and paramount beneficiary of its exercise." *In re the Condemnation of Bruce Avenue*, 438 Pa. 498, 266 A.2d 96, 99 (1970) (citation and internal quotation marks omitted). Thus, for a taking to be considered as effectuating a public purpose, this court has required that it is the citizenry at large, rather than a private entity or individual, that will be the principal recipient of any benefit.

Appellee contends that the opening of a private road cannot be considered a taking for a public purpose. He reasons that "[a]lthough one can concede that society at large benefits when a landowner has access to his or her property, it is a stretch of logic to say that giving limited, private access is, therefore, a public purpose." Appellee's brief at 3. We must agree. The primary beneficiary of the opening of a private road is the private individual or entity who petitions for such relief. Granted, society as a whole may receive a collateral benefit when landlocked property may be accessed by motorized vehicles, and thus presumably be put to its highest economic use; yet, it cannot seriously be contended that the general population is the primary beneficiary of the opening of a road that is limited to the use of the person who petitioned for it.[3] Thus, as the opening of a private road pursuant to the

3. We note that a private road is, as its term implies, not open to the general public, but rather is created for a certain person or group of

Act does not accomplish a public purpose, it cannot be seen as the exercise of the power of eminent domain.[4]  As such, the opening of a private road pursuant to the Act in an ASA did not require the prior approval of ALCAB.[5]

For the foregoing reasons, the order of the Commonwealth Court is affirmed.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice SAYLOR files a concurring opinion.

Justice NEWMAN files a dissenting opinion in which Justice NIGRO joins.

Justice SAYLOR, concurring.

I share the view expressed by Madame Justice Newman in her dissenting opinion that interpreting the Private Road Act, 36 P.S. §§ 2731–2891, as implicating little or no public interest undermines its ostensible constitutionality.  *Cf. Pratt v. Allen,* 116 Misc.2d 244, 455 N.Y.S.2d 904, 906–07 (N.Y.1982) (analyzing a proceeding under New York's private road enactment as entailing an exercise of eminent domain, which must be grounded in a public purpose to meet constitutional requi-

persons.  The Act specifically states that where persons other than the recipient of the private road desire to use the road, they must first obtain court permission.  36 P.S. § 2761.

**4.**  The dissent asserts that this finding *de facto* renders the Act unconstitutional.  Yet, the constitutionality of the Act is not before this court; rather, this claim is raised *sua sponte* by the dissent.  As we are averse to address any issue, particularly one of constitutional dimension, when that issue is not before the court, we decline to respond to the dissent's argument.

**5.**  In their brief, Appellants recognize that if they were able to establish that the opening of a private road pursuant to the Act constitutes an exercise of eminent domain, they would then have to establish that such an exercise was effectuated by a governmental or other "body" in order to obtain the relief they request.  *See* 3 P.S. § 913(a) and (b).  As we have determined that the opening of a private road pursuant to the Act does not constitute an exercise of the powers of eminent domain, then Appellants' claim for relief necessarily fails;  there is no need for us to consider their additional argument that a governmental or other "body" exercised powers of eminent domain in opening the private road.

sites).[1] Nevertheless, I believe the Commonwealth Court's decision may be affirmed on an alternate ground, without the need to effectively delineate the Private Road Act as unconstitutional in this case.

In this regard, the focus of Section 913 of the Agricultural Area Security Law ("AASL"), 3 P.S. § 913, is upon "an agency of the Commonwealth having or exercising powers of eminent domain . . . ," or a "political subdivision, authority, public utility or other body having or exercising powers of eminent domain. . . ." 3 P.S. § 913(a), (b). Notably, the legislative findings underlying the AASL indicate a concern with "urban pressure from expanding metropolitan areas." 3 P.S. § 902. Perhaps for this reason, the relevant provisions of the AASL are directed at those entities with which the power of eminent domain is traditionally associated. Thus, although I conclude that a proceeding under the Private Road Act represents an exercise of eminent domain power, *see generally Application of Little,* 180 Pa.Super. 555, 558, 119 A.2d 587, 589 (1956), I view it as equally material that in this case such exercise was not accomplished by one of the entities delineated in the AASL. Rather, the eminent domain power was carried out through a court of common pleas on behalf of an individual property owner, Appellee, via the discrete and singular statutory mechanism embodied in the Private Road Act.

As observed by the dissent, there may be valid reasons that would support extending the provisions of the AASL to Private Road Act proceedings. Since, however, there are policy considerations militating to the contrary, and given the present framework of Section 913, I believe that any adjustment in the area is best left to the General Assembly.

1. Notably, various courts disagree about the constitutional validity of enactments along the lines of the Private Road Act. *Compare Pratt,* 455 N.Y.S.2d at 905–07, *with Tolksdorf v. Griffith,* 464 Mich. 1, 626 N.W.2d 163, 168 (2001) (concluding that Michigan's Private Roads Act was unconstitutional, as permitting the "state's power of eminent domain to convey an interest in land from one private person to another"). One point of general agreement, however, is that some public purpose must be discerned in order for the legislation to survive constitutional scrutiny. *See Pratt,* 455 N.Y.S.2d at 905–07; *Tolksdorf,* 626 N.W.2d at 168.

Justice NEWMAN, dissenting.

At issue in this case is the interplay between the Private Roads Act (PRA)[1] and the Agricultural Area Security Law (AASL).[2] I disagree with the conclusion reached by the Majority and, therefore, dissent.

In August of 1998, pursuant to Section 11 of the PRA, 36 P.S. § 2731, Robert W. Forrester (Appellee) petitioned the Court of Common Pleas of Franklin County (trial court) for the appointment of a Board of View[3] to open a 25–foot–wide easement for a "private road" to provide access from his landlocked property to the nearest public road. The trial court granted the petition and, subsequently, the Board of View issued a report fixing the location of the "private road" to run over farmland owned by Rodney J. McKenrick, Bonnie F. McKenrick, Harold S. Forrester, and Helen B. Forrester (collectively "Appellants") and assessing damages against Appellee in the amount of $11,325.00.[4] Thereafter, the trial court affirmed the report.

Appellants objected throughout these proceedings, arguing that because their farmland was located within an "agricultur-

1. Act of June 13, 1836, P.L. 551, *as amended*, 36 P.S. §§ 2731–2891.

2. Act of June 30, 1981, P.L. 128, *as amended*, 3 P.S. §§ 865–915.

3. The duties of the Board of View (or as it has also been termed—the Board of Viewers) have been defined as follows:

   The persons appointed [as viewers], shall view such ground, and if they shall agree that there is occasion for a road, they shall proceed to lay out the same, having respect to the shortest distance, and the best ground for a road, and in such manner as shall do the least injury to private property, and also be, as far as practicable, agreeable to the desire of the petitioners.

   36 P.S. § 1785. *See Fengfish v. Dallmyer*, 434 Pa.Super. 250, 642 A.2d 1117, 1119 (1994).

4. The petition filed by Appellant referenced two existing private roads for which he had no "right of way." The first one is approximately one mile in length. It includes a bridge and crosses over several privately owned properties. The second referenced road, approximately one half-mile in length, crosses the property owned by the Appellants, and is the road at issue. It appears that Appellee preferred an easement incorporating this road, because (1) his father had used that road from 1949 through 1980 without a written easement; (2) it was safer for a truck carrying lumber; and (3) it was shorter than the alternative road.

al security area," as defined by the AASL, a "private road" may not be opened without approval of the Agricultural Lands Condemnation Approval Board (ALCAB).[5] The Board of View, the trial court, and the Commonwealth Court rejected this position and refused to apply the AASL in "private road" cases. They reasoned that opening a "private road" to a landlocked property does not endanger agricultural production in "agricultural security areas," which is the purpose of the AASL. *In re Forrester*, 773 A.2d 219, 221–23 (Pa.Cmwlth. 2001); *see also Laying Out a Private Road in Charleston Township*, 683 A.2d 947 (Pa.Cmwlth.1996). The Majority affirms these decisions by way of a different analysis; specifically, according to the Majority:

> [A]s **the opening of a private road pursuant to [the PRA] does not accomplish a public purpose,** it cannot be seen as the exercise of the power of eminent domain. As such, the opening of a private road pursuant to [the PRA] in an ["agricultural security area"] did not require the prior approval of ALCAB.

Majority Opinion, p. 105–06 (emphasis supplied). Since I disagree with both of these rationales, I will address them in turn.

While I acknowledge that the public must petition before using a road created pursuant to Section 11 of the PRA, *see* 36 P.S. § 2761, unlike the Majority, I believe that the opening of such a road as an access to an otherwise landlocked property necessarily implicates important public interests. At issue in this case is the creation of a "private road." This Court has previously articulated that the PRA defines a "private road" as "**a road** from the respective dwellings or plantations ... **to a highway or place of necessary public resort, or to any private way leading to a highway.**" *West Pikeland Road*, 63 Pa. 471 (Pa.1870) (emphasis supplied); *Sandy Lick Creek*, 51

5. *See* 3 P.S. § 913. As the Majority describes, pursuant to Section 913, "no agency of the Commonwealth, political subdivision, authority, public utility or other body 'having or exercising powers of eminent domain shall condemn' any land within an [agricultural security area] unless prior approval has been obtained from ALCAB." Majority Opinion, p. 104.

Pa. 94 (Pa.1865) (stating that "[u]nder the [PRA], the Court of Quarter Sessions have power to lay out a private road from the dwellings or plantations of the petitioners to a highway or place of necessary resort, or to some other private way that leads to a highway, but they have no power under these sections or any other to lay out private roads except between such termini"); *also see Killbuck Private Road,* 77 Pa. 39, 43 (Pa.1874). Hence, by the terms of this definition, which excludes roads that merely interconnect private land, the PRA applies only to roadways that connect private property with public highways. We have observed that, as such,

> [A private road] is part of the system of public roads, essential to the enjoyment of those which are strictly public; for many neighborhoods as well as individuals would be deprived of the benefit of the public highway, but for outlets laid out on private petition and at private cost, and which are private roads in that sense, but branches of the public roads and open to the public for purposes for which they are laid out.

*Palairet's Appeal,* 67 Pa. 479, 492 (Pa.1871) (citing *In re Hickman,* 4 Del. 580 (Del.O. & T.1847)); *see also Philadelphia Clay Co. v. York Clay Co.,* 241 Pa. 305, 88 A. 487 (1913); *accord Bashor v. Bowman,* 133 Tenn. 269, 180 S.W. 326, 327 (1915) (observing that "[t]he public is interested in every citizen having a right of way to and from his lands or residence [and t]he constitutionality of a so-called private road law rests upon the obligation of the sovereignty to afford to each member of the community a reasonable means of enjoying the privileges and discharging the duties of a citizen"); *Sherman v. Carrick,* 32 Cal. 241, 255 (1867) (noting that "[r]oads, leading from the main road which runs through the country to the residences or farms of individuals, are of public concern and under the control of the Government"). In turn, there are many public benefits in allowing private property owners access to their landlocked land.

> [I]t is for the public benefit that every citizen should have the means of discharging his public duties, such as voting or attending court as a juror or witness, and because it affords

higher assessments upon the landlocked property for municipal tax purposes. Also it is in the public interest that police, firemen, and representatives of other public health, welfare and municipal agencies have access to the dwelling. *Marinclin v. Urling,* 262 F.Supp. 733, 736 (W.D.Pa.1967) (finding that the PRA does not authorize a taking for a purely private purpose and, therefore, does not violate the Fourteenth Amendment to the Constitution of the United States), *affirmed,* 384 F.2d 872 (3rd Cir.1967); *see also Latah County v. Peterson,* 2 Idaho 1118, 29 P. 1089, 1090 (1892) (noting that "[without private roads] it would be impossible to improve very many valuable tracts of land in this state which are not reached by public highways"). Accordingly, while the individual property owner may be the immediate beneficiary of the opening of a "private road," I disagree with the Majority, because I view the public benefits described above as important and essential to the existence of our society.

Article I, Section 1 of the Pennsylvania Constitution declares that:

> **All men** are born equally free and independent and **have certain inherent and indefeasible rights, among which are those** of enjoying and defending life and liberty, **of acquiring, possessing and protecting property** and reputation, and of pursuing their own happiness.

Pa. Const. Article I, Section 1 (emphasis supplied). In turn, Section 10 of the same Article provides "nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." Pa. Const. Article I, Section 10. Considered together, these passages embody the underlying sanctity of private property ownership enjoyed by the citizens of this Commonwealth, which yields only in the face of **public** interest. *See Appeal of Lance,* 55 Pa. 16, 25 (Pa.1867) ("The right of the Commonwealth to take private property without the owner's assent on compensation made, or authorized it to be taken ... can never be lawfully exercised but for a public purpose—supposed and intended to benefit the public, either mediately or immediately"). Indeed, as early as 1871, this

Court recognized that "[i]t has become, then, a fundamental axiom of constitutional law, not only in this, but in every other state of this Union, that **the legislative power cannot, either directly or indirectly, without the consent of the owner, take private property for merely private use,** with or without compensation." *Palairet's Appeal,* 67 Pa. at 486 (emphasis supplied); *see also Philadelphia Clay,* 88 A. at 489 (stating that "[w]hile the Constitution does not in express terms deny the right to take property for a private use under the power of eminent domain, the plain implication is that the power can only be exercised when the property taken is for a public use").

In light of this legal paradigm, the constitutionality of the PRA rests entirely on the existence of public benefits derived from the establishment of a "private road" that creates a passageway from a landlocked property to a public highway. Thus, by declaring that the taking pursuant to the PRA implicates little or no public interest, the Majority, without a single comment, has essentially invalidated the entire scheme of private road construction that has existed in this Commonwealth since the eighteenth century.[6] Given my previously articulated rationale, I cannot agree with this result.[7]

**6.** *See* Act of April 6, 1802 (recorded in Laws of the Commonwealth of Pennsylvania 1700–1810, Vol. III, pp. 512–524); Act of February 20, 1735 (recorded in Statutes at Large of Pennsylvania From 1682–1801, Vol. 4 (1724–1744) (Statutes at Large), pp. 296–297). Importantly, the Legislature enacted the 1735 statute, which authorizes the laying out of roads at the request of private individuals to create access to public highways, to address "the great increase of our inhabitants [that] has been found to be very inconvenient and burdensome **as well to the public as to private persons.**" Act of February 20, 1735, Statutes at Large, p. 296. (Emphasis supplied). This language further reinforces my conclusion that the statutory scheme that allows for the creation of "private roads" is historically intertwined with the interests the public derives from the existence of such roads.

**7.** The Majority chooses not to address my reasoning, because "the constitutionality of the [PRA] is not before this [C]ourt." MO, p. 106, n. 4. I note, however, that the invalidation of the PRA is the natural result of the analysis advanced by the Majority. Respectfully, while I agree that this Court should not address issues that were not raised by the parties (particularly issues of constitutional dimension), I feel compelled to comment on what, I maintain, will be the fallout from the disposition of this matter and its supporting rationale.

Furthermore, contrary to this conclusion of the Commonwealth Court, I believe that it is foreseeable that opening a private road through an "agricultural security area" could interfere with agricultural production and the preservation of farmlands. Applying the AASL to private road proceedings would not prohibit the owner of a landlocked parcel from obtaining a "private road," but would simply submit the placement of that road, when located in an "agricultural security area," for approval by the ALCAB. In turn, the ALCAB would review the placement of the road to ensure that it is prudent and reasonable, which would be fair to both the farmer and the owner of the landlocked property.

Accordingly, I would reverse the decision of the Commonwealth Court.

Justice NIGRO joins this Dissenting Opinion.