**In re Condemnation of Right-of-Way for State Route 0145**

494

C.P. of Lehigh County, no. 2010-C-3404.

*John V. Rovinsky*, for condemnor.
*Timothy J. Siegfried*, for condemnee Lehigh Valley Hospital.
*William G. Malkames*, for condemnees Kasych.

FORD, *J.*, March 4, 2011—In this eminent domain case, the Commonwealth of Pennsylvania, Department of Transportation (PennDOT), filed a declaration of taking seeking to obtain title to certain property and easement rights over other adjacent property located along MacArthur Road in Whitehall Township. Lehigh County. PennDOT intends to use the land seized to make safety improvements along MacArthur Road, widen the road and install a drainage swale along the route.

Charles Kasych, Jr. and Anna Kasych (the Kasychs) and Lehigh Valley Hospital (hospital), property owners affected by this taking, have filed preliminary objections to PennDOT's declaration of taking. All of the Kasychs' preliminary objections lack merit and are overruled. Hospital met its burden of demonstrating that PennDOT's taking of its property was excessive as to a specific portion of its seized property which the litigants called the "bulb." The preliminary objection as to the bulb is sustained. All other preliminary objections of the hospital are overruled.

## PROCEDURAL HISTORY

On July 12, 2010, PennDOT filed a declaration of taking against numerous property owners in Whitehall Township, including hospital and the Kasychs, to improve this stretch of MacArthur Road "for transportation purposes." (Paragraph 5 of the declaration.)

On August 13, 2010, the Kasychs filed preliminary objections to the declaration of taking. In the preliminary objections, which are permitted under 26 Pa.C.S. § 306, the Kasychs contend that PennDOT is taking their property

for an illegal purpose. On September 3, 2010, PennDOT filed an answer to the Kasychs' preliminary objections.

On August 16, 2010, hospital filed preliminary objections to the declaration of taking. Through the preliminary objections, hospital challenges the extent of PennDOT's taking and raises issues about compensation for the taking and security to be posted. PennDOT filed its answer to hospital's preliminary objections on September 9, 2010.

On October 25, 2010, the court conducted argument on all of these preliminary objections. Before the argument, the parties developed and submitted a factual record for the disposition of the preliminary objections. The record includes depositions and exhibits.

## FINDINGS OF FACT

1. The Kasychs were the owners in fee simple of a 25.366 acre parcel located at 3330 MacArthur Road in Whitehall Township (Kasych property).

2. By filing the declaration of taking on July 12, 2010, PennDOT obtained a temporary construction easement over a .114 acre portion of the Kasych property.

3. PennDOT, a Commonwealth agency, possesses the power of taxation and condemnation.

4. The condemnation of the Kasych property is part of a PennDOT safety improvement project affecting a one-quarter mile corridor of MacArthur Road stretching between that route's intersection with Eberhart Road and its intersection with Center Street, all in Whitehall Township.

(Deposition of Max Inkrote, Jr., on Kasych claim, pp. 14-15) This stretch of MacArthur Road has the highest accident ratio in PennDOT District 5-0. (Deposition of Max Inkrote, Jr., on Kasych claim, p. 11) The high number of accidents on this section of MacArthur Road results from travel at high speeds and the existence of too many options for drivers to turn into and out of driveways and side streets. (Deposition of Max Inkrote, Jr., on Kasych claim, pp. 11-12)

5. PennDOT hired the Larson Design Group (Larson), an engineering firm, to design and oversee these safety improvements to MacArthur Road. Max Inkrote, Jr., an engineer with Larson, oversaw the design of the project. Kenneth Kutchinsky is the PennDOT District 5-0 Right-of-Way Administrator managing all of the takings associated with the MacArthur Road project.

6. The Kasych property currently has a driveway leading to MacArthur Road. Because a cement barrier separates the northbound and southbound lanes of MacArthur Road in front of the Kasych property, a driver cannot make a turn left onto MacArthur Road from the Kasychs' driveway. The Kasych driveway is located in close proximity to Municipal Drive, a public road with traffic signals that intersects MacArthur Road. Municipal Drive is located on the opposite side of MacArthur Road from the Kasych driveway, but does not perfectly align with the driveway. (Deposition of Max Inkrote, Jr., on Kasych claim, pp. 15-16) This poorly aligned driveway and road configuration create a dangerous situation.

7. To eliminate this dangerous condition, PennDOT proposed a plan which is part of the safety improvement project to realign the Kasych driveway so that it intersects MacArthur Road directly across from Municipal Drive. Therefore, drivers exiting the Kasych driveway would be able to make right and left turns onto MacArthur Road with the added safety of traffic signals. PennDOT also proposed a general widening of the Kasych driveway from 10 feet wide to 12 feet wide. The driveway would also be widened to 22 feet near its intersection with MacArthur Road to allow drivers entering and exiting the driveway to safely pass each other. (Deposition of Max Inkrote, Jr., on Kasych claim, pp. 18-19)

8. Hospital owned 149.571 acres of land at 3230 MacArthur Road in Whitehall Township (hospital property). The hospital property was located adjacent to the Kasych property and included 125 acres donated to the hospital by the Kasychs.

9. Hospital believed that the Kasychs would eventually donate all of their property along MacArthur Road to hospital. Based on this assumption, hospital considered creating a subdivision on this property. In 2006, hospital hired the Pidcock Company (Pidcock), an engineering firm, to prepare a plan for the potential subdivision. (A copy of the "Kasych Tract Concept Plan" is marked as Exhibit K-1 to the depositions) The Pidcock plan envisioned a public road leading to the development in the exact location of the realigned Kasych driveway now proposed by PennDOT. However, because the Kasychs did not donate all of their property along MacArthur Road

to hospital, the subdivision plans were never submitted to any municipal body. (Deposition of Glenn Guanowsky, pp. 5-7)

10. Max Inkrote, Jr., the engineer with Larson hired by PennDOT, was unaware of the history of the proposed subdivision on the hospital property at the time he designed the realigned driveway for the Kasych property. (Deposition of Max Inkrote, Jr., on Kasych claim, p. 46) The fact that the hospital had previously formulated a tentative plan to construct a road in the area of the realigned driveway did not influence the designs of the PennDOT safety project on the Kasych driveway. (Deposition of Max Inkrote, Jr., on Kasych claim, pp. 47-48; Deposition of Kenneth Kutchinsky on Kasych claim, p. 10)

11. This PennDOT safety project on the Kasych property did not benefit hospital. Hospital never contacted PennDOT regarding the Kasych taking nor requested that PennDOT effectuate the taking. (Deposition of Glenn Guanowsky, pp. 10-11)

12. The realigned Kasych driveway proposed by PennDOT on the Kasych property does not extend onto the hospital property.

13. PennDOT's sole purpose in proposing the alterations to the Kasych driveway and MacArthur Road in the area of the Kasych property was to eliminate the hazardous driving conditions in that area. (Deposition of Max Inkrote, Jr., on Kasych claim, pp. 11-13)

14. Through the filing of the declaration of taking on

July 12, 2010, PennDOT acquired 3.15 acres of hospital property in fee simple and obtained a drainage easement over another 1.294 acres of hospital property. Thus, PennDOT acquired an interest in 4.444 total acres of hospital property through the taking.

15. PennDOT plans to use approximately one half of the 4.444 acres of hospital property for road widening purposes, while the remaining half will be used for the creation of a drainage swale. (Deposition of Max Inkrote, Jr., on hospital claim, p. 40)

16. PennDOT began planning this MacArthur Road project in 2002. Between 2005 and 2008, Larson engineers met with representatives of PennDOT, the Pennsylvania Department of Environmental Protection (DEP), the Lehigh Valley Planning Commission (LVPC), the Lehigh County Conservation District (LCCD) and Whitehall Township to make this plan feasible with its safety improvements. PennDOT needed approval for the project from all of these entities. (Deposition of Max Inkrote, Jr., on Hospital claim, pp. 16-19)

17. In July of 2008, Mr. Inkrote and other Larson personnel met with representatives of DEP, LVPC, LCCD and other entities to present PennDOT's plan for a drainage system along MacArthur Road. The plan called for an open swale with two collection basins along the route. This proposed drainage swale would be created in the portion of hospital property over which PennDOT acquired drainage easement rights. Matthew Curry of DEP suggested that Larson eliminate the basins from the design and, instead, include a wider drainage swale. According

to Mr. Curry, this larger swale could be used as a storm water management facility as opposed to its being used only as a mechanism for the conveyance of run-off. These changes to the plan suggested by Mr. Curry were intended to improve the water quality, water volume and water rate of run-off entering the drainage system. (Deposition of Max Inkrote, Jr., on hospital claim, pp. 21-22)

18. PennDOT, acting through its Larson engineers, accepted the suggestions of Mr. Curry and proposed an amended plan which eliminated the two drainage basins in favor of the wider drainage swale.

19. PennDOT submitted a drainage plan incorporating Mr. Curry's recommendations to the required agencies for approval in December of 2008. The plan received final approval from the various agencies in July of 2010. (Deposition of Max Inkrote, Jr., on Hospital claim, pp. 21-28)

20. As a result of PennDOT's changes to the drainage plan, a .5 acre portion of Hospital property taken by PennDOT, which lies near the traffic "bulb" at Lehigh Street, is no longer needed for PennDOT to construct its drainage system. PennDOT took .3 acres of this portion in fee simple and obtained a drainage easement over the remaining .2 acres. (Deposition of James A. Rothdeutsch, pp. 11-12)

21. DEP and LCCD, both agencies concerned with environmental protection, favor the use of open swales over underground pipes for run-off management purposes. (Deposition of Max Inkrote, Jr., on hospital claim, pp. 33-34) Engineers generally regard open swales as more

protective of the environment than underground pipes. (Deposition of Max Inkrote, Jr., on hospital claim, p. 59)

22. It is more costly to install an underground drainage pipe than to create an above-ground, open drainage swale. (Deposition of Max Inkrote, Jr., on hospital claim, pp. 33, 43, 57-58, 65-66) Furthermore, it is more costly to maintain an underground drainage pipe than an above-ground, open swale. (Deposition of Max Inkrote, Jr., on hospital claim, pp. 33, 43)

23. The Larson engineers, in formulating a drainage plain for the MacArthur Road project, never considered using an underground pipe, as opposed to an open swale, to manage storm water run-off. (Deposition of Max Inkrote, Jr., on hospital claim, p. 58) This was due to their understanding that underground pipes are usually placed only when a property owner seeks to preserve the surface area of its property to allow for the construction of a building or a parking lot. (Deposition of Max Inkrote, Jr., on hospital claim, pp. 32-33) The hospital property over which the swale would run is undeveloped land. No definite plans for development of it currently exist.

24. In designing the open swale for the project, Mr. Inkrote considered the cost and efficiency of the open swale design, and the impact on driver safety and traffic patterns that the construction of such a project would necessarily have. (Deposition of Max Inkrote, Jr., on hospital claim, pp. 40-41)

25. With the exception of the "bulb" area identified above in Paragraph 20, all of the hospital property condemned by PennDOT was necessary for the widening

of MacArthur Road and the construction of the drainage system proposed by PennDOT. (Deposition of Max Inkrote, Jr., on hospital claim, p. 39)

26. PennDOT is responsible for all future maintenance of the open swale to be located on the hospital property. (Deposition of Max Inkrote, Jr., on hospital claim, p. 34; Deposition of Kenneth Kutchinsky, on hospital claim, p. 10)

27. Hospital hired Pidcock, the engineering firm, for a second purpose, namely, to formulate a drainage plan to offer as an alternative to the open swale design by PennDOT (Pidcock's earlier work is described in Paragraph 9.) James A. Rothdeutsch, an engineer with Pidcock, presented the alternative design.

28. Under the Pidcock plan, run-off water on MacArthur Road would be channeled through an underground pipe instead of through an open swale. (Deposition of James A. Rothdeutsch, pp. 11-15) For the underground pipe proposed by Pidcock, PennDOT would condemn only 2.110 acres of hospital property through eminent domain proceedings. According to the Pidcock plan, PennDOT would take all 2.110 acres in fee simple. (Deposition of James A. Rothdeutsch, p. 17)

29. Pidcock's alternative drainage plan did not sufficiently incorporate safety considerations or the impact of the design on traffic control. (Deposition of James A. Rothdeutsch, pp. 54-55) Pidcock did not address how the installation of an underground pipe would temporarily affect traffic lanes in the area of the installation. (Deposition of James A. Rothdeutsch, p. 52)

30. Pidcock's primary consideration in preparing the alternative plan for hospital was to design a drainage system that would necessitate the smallest possible taking of hospital property through eminent domain proceedings. (Deposition of James A. Rothdeutsch, pp. 52-53)

## DISCUSSION AND CONCLUSIONS OF LAW

Preliminary objections in eminent domain proceedings serve a purpose different from preliminary objections filed in other civil actions. *In re a Condemnation Proceeding by South Whitehall Township*, 822 A.2d 142, 143 n.3 (Pa.Commw. 2003). "Preliminary objections under the Eminent Domain Code are intended as a procedure to resolve expeditiously all legal and factual challenges to the declaration of taking before the parties move to the second distinct proceeding of quantifying damages." *In re Condemnation by Department of Transportation, of Right of Way for State Route 79, Section W10,* 568 Pa. 546, 555-56, 798 A.2d 725, 731 (2002).

### The Kasychs' Preliminary Objections

The Kasychs assert only one argument in their preliminary objections. They contend that PennDOT impermissibly seized their private property for the purpose of conferring a private benefit on hospital. They allege that PennDOT seeks to realign their driveway with the Municipal Drive intersection because PennDOT intends to eventually convert the driveway into a public road providing access to a future subdivision on hospital property. Contrary to this assertion, the evidence of record indicates that PennDOT seized the Kasychs' property for legitimate public purposes.

A government entity such as PennDOT is authorized to seize private property through eminent domain proceedings only where the seizure serves a public purpose. See *In re Forrester*, 575 Pa. 365, 368, 836 A.2d 102, 104 (2003); Pa. Const. art. I, § 10; and U.S. Const. amend. V. Conversely, if a government entity takes private property for the purpose of conferring a private benefit, the taking can be voided. *Kelo v. City of New London*, 545 U.S. 469, 477, 125 S.Ct. 2655, 2661 (2005). The Kasychs bear the burden of demonstrating that PennDOT abused its discretion by taking for an improper purpose. See *Appeal of Octorara Area School District*, 556 A.2d 527, 529 (Pa.Commw. 1989). The burden of proving an abuse of discretion in an eminent domain action is a heavy one. *In re School District of Pittsburgh*, 430 Pa. 566, 575, 244 A.2d 42, 46 (1968).

There is no evidence to support the Kasychs' contention that PennDOT took their property to impermissibly benefit the private interests of hospital. In 2006, hospital investigated the possibility of developing a subdivision on its property adjacent to the Kásych property. A plan for this proposed subdivision included the construction of a public road in the exact area of the realigned Kasych driveway now proposed by PennDOT. However, this tentative subdivision plan was never submitted to any municipal body. The Larson engineer managing the safety improvements on MacArthur Road for PennDOT was unaware of the hospital's prior development plans when he designed the realigned driveway. Further, it appears that no hospital personnel made an approach to PennDOT for the realignment. Finally, the realigned Kasych driveway

proposed by PennDOT would exist only on the Kasych property and would not extend to hospital property. Thus, there is no believable evidence that the proposed realignment of the Kasych driveway would provide a private benefit for hospital.

Moreover, the evidence before the court demonstrates that PennDOT is temporarily taking the Kasych property for a legitimate public purpose. As was mentioned, the area of MacArthur Road around the Kasych property has the highest accident ratio in PennDOT District 5-0. PennDOT personnel involved in this safety project convincingly testified that the proposal to realign the Kasychs' driveway with the signaled intersection at Municipal Road was done solely to address the obvious dangers presented by the current road configuration. No evidence of record contradicts this stated public purpose.

For all of these reasons, the Kasychs' preliminary objections lack merit and are overruled.

*Hospital's Preliminary Objections*

Through its preliminary objections, hospital contends that PennDOT abused its discretion by seizing more hospital land than was necessary to accomplish its stated purposes. Further, the hospital raises issues related to compensation for the taking and the adequacy of the bond securing the taking.

Hospital's first preliminary objection is made under 26 Pa.C.S. § 306(a)(3)(i), which allows a condemnee to challenge "the power or right of the condemnor to

appropriate the condemned property." Hospital contends that PennDOT abused its discretion and exceeded its power by taking more hospital property than was necessary to widen MacArthur Road and create an appropriate drainage system for run-off water.

"The sole limitation on the exercise of a condemnor's power is that it may not appropriate a greater amount of property than is reasonably required for the contemplated purpose." *In re Waite*, 641 A.2d 25, 28 (Pa.Commw. 1994). While the quantum of land to be acquired is generally a matter left to the discretion of the condemnor, such discretion is subject to reasonable limitation. *Truitt v. Borough of Ambridge Water Authority*, 389 Pa. 429, 432, 133 A.2d 797, 798 (1957). Hospital bears the heavy burden of demonstrating that PennDOT abused its discretion. *Appeal of Octorara Area School District*, 556 A.2d at 529; and *In re School District of Pittsburgh*, 430 Pa. at 575, 244 A.2d at 46.

Through reliance on the drainage plan of Pidcock, hospital argues that PennDOT could have met all of its goals while taking only 2.110 acres of hospital land, instead of the 4.444 acres seized.

The evidence indicates that PennDOT acted reasonably in selecting an above-ground, open swale to address water run-off on MacArthur Road. Over a span of years, engineers from Larson, PennDOT's engineering firm, met with representatives from the various agencies that were responsible for approving the final drainage plan. The Larson engineers considered the suggestions of

these agency representatives when designing the open swale drainage system. PennDOT's finalized plan for an open swale submitted to the agencies was based on the recommendations of a DEP representative, Matthew Curry.

Additionally, PennDOT's decision to choose an open swale as a drainage system adheres to accepted standards used by engineers working in the field of run-off maintenance. Both DEP and LCCD favor the use of open swales over underground pipes for run-off management purposes because swales are considered more environmentally friendly. Further, the costs for creating and maintaining a swale are lower than the costs for installing and maintaining a drainage pipe. Also, it is customary for engineers to design a drainage system with an underground pipe only where there is a need to preserve the surface area of the property in question. The property taken from the hospital is undeveloped land. No plans exist for development necessitating the preservation of surface area on the seized land. After consideration of all of these factors, it is apparent that PennDOT's decision to utilize an open swale drainage system was reasonable and did not amount to an abuse of discretion.

There appear to be oversights in the alternative drainage plan proposed by Pidcock. The deposition testimony of Mr. Rothdeutsch, a Pidcock engineer, revealed that the firm did not consider the impact that the installation of an underground pipe would have on traffic control. Pidcock did not sufficiently consider issues regarding roadway safety when creating its drainage plan. All said, the Pidcock

Company's plan focuses on the design of a drainage system while other significant considerations were necessary. Conversely, the PennDOT plan encompasses both a drainage system and the road safety improvements that are the underlying motivation for the entire MacArthur Road project.

The evidence also indicates that PennDOT needed to seize almost all of the 4.444 acres of hospital property to properly widen MacArthur Road and to create the drainage swale. Max Inkrote, Jr. testified at his deposition that all of the land seized from hospital was to be used in the MacArthur Road safety project. (Deposition of Max Inkrote, Jr., on hospital claim, p. 39). Mr. Inkrote explained that PennDOT would need roughly one half of the 4.444 acres of hospital property taken for road widening purposes, while the remaining half was needed for the creation of the drainage swale. (Deposition of Max Inkrote, Jr., on hospital claim, p. 40) Taken as a whole, his explanations were logical and persuasive on the necessity of taking almost the entirely of the 4.444 acres. Thus, the court finds that PennDOT did not abuse its discretion in taking the vast majority of hospital property seized.

On the other hand, hospital demonstrated that .5 acres of hospital property seized by PennDOT near the traffic "bulb" where Lehigh Street meets MacArthur Road is no longer needed by PennDOT to construct the open swale drainage system. (Deposition of James A. Rothdeutsch, pp. 11-12) PennDOT's evidence is scant and vague on this topic. Thus, PennDOT abused its discretion in including the "bulb" in its taking so hospital's preliminary objection

to the taking of the bulb is sustained. That part of hospital's property shall not be included in this taking.

Hospital next claims that PennDOT failed to justly compensate hospital for the taking of its property along MacArthur Road. Issues on compensation in an eminent domain proceeding may not be raised by preliminary objections so these preliminary objections are overruled. 26 Pa.C.S. § 306(b); and *Chester Township v. Department of Transportation*, 339 A.2d 892 (Pa.Commw. 1975).

Finally, hospital asserts that PennDOT failed to post sufficient security for the taking. However, 26 Pa.C.S. § 303(b)(1) states that "[w]here a condemnor has the power of taxation, it shall not be required to file a bond with a declaration of taking." PennDOT operates as an agency of the Commonwealth of Pennsylvania, an entity with the power of taxation. Because the Commonwealth possesses the power of taxation, its agency, PennDOT, is not required to post a bond when filing a declaration of taking. Therefore, this preliminary objection is overruled.

In sum, hospital met its burden of demonstrating that PennDOT abused its discretion in taking the .5 acre "bulb" of hospital property near where Lehigh Street meets MacArthur Road. This taking is excessive and is therefore voided. All other preliminary objections of hospital are overruled.