In the Matter of: OPENING A PRIVATE ROAD FOR the BENEFIT OF Timothy P. O'REILLY OVER LANDS OF (A) HICKORY ON the GREEN HOMEOWNERS ASSOCIATION, AND (B) MARY LOU SORBARA; Gregory E. Burgunder; Ann E. Cain; Don E. Cottrill & Norma J. Cottrill, h/w; Joseph K. Cupples; Bart V. Delcimmuto; James D. Dragoo & Linda J. Dragoo, h/w; Kimberly M. Fonzi; Brian J. Gallagher & Diane J. Gallagher, h/w; Dolores M. Gembarosky; Michael J. Gralish, Jr. & Virginia A. Gralish, h/w; Diane M. Giuliana; Jeffery W. Hutchens; David B. Keith & Christina A. Keith, h/w; Joanne B. Kuchinic, Testamentary Trust; Harry J. Lee, Jr.; Jay A. Levy; S. Greg Malone; Joseph V. Mazur & Kelly L. Poole; Martin Mickey & Melissa G. Mickey, h/w; Regis G. Niederberger & Kathleen C. Niederberger, h/w; Gordon J. Orr; Anne M. Paul; Thomas G. Porter; Roseanne E. Petraglia; Eric H. Rittenhouse & Danielle L. Rittenhouse, h/w; John J. Sahlaney; Jerome Schmier & Carol Falo, h/w; John R. Shafer, Trustee or his successors in trust, under the John S. Shafer Living Trust, dated November 20, 2001, and Jessie M. Shafer, Trustee, or her successors in trust, under the Jessie M. Shafer Living Trust, dated November 20, 2001; Marcus A Spatafore & Kristin C. Brazell; William E. Sprecher & Marcellene Sprecher, h/w; and Frank J. Sprecher & Agnes E. Sprecher, h/w, Life Estate; Roxanne M. Squillante; Susan C. Stanko; Shanan R. Stewart; Richard H. Sweet & Marsha A. Sweet, h/w; Gregory Taylor; John M. Thomas; Thomas P. Wakim & Kimberly L. Wakim, h/w; Betty B. Williams & Leon I. Williams (Co–Trustees);

Royce D. Vanderpool; Melissa J. Schiller & Melanie M. Schiller; Janet Zewe; Frank A. Bodnar; Karen R. Billingham; Bradford R. Jones; Virginia L. Knaus, Trustee Under Qualified Personal Residence Trust Agreement, dated July 27, 2000; Joan L. Massella; Donna Durkan; Geraldine R. Altenhof; Elizabeth Beck; Darlene A. Taylor; James E. Spence & Kathy F. Spence, h/w; Lance D. Moller; Lindy M. McGee; the Judith F. Koblitz Trust; Richard E. McNutt & Helena A. McNutt, h/w; Dorothy D. Wagner; Spitzig Living Trust and William A. Spitzig and Marilyn J. Spitzig (Trustees); Sandra H. O'Connell; Thomas C. Skena; Zaraf Moshin; Paul W. Amic & Carole L. Amic, h/w; Margaret M. Showalter; James P. Flannery & Patricia C. Flannery, h/w; Deborah A. Gertz; Carol L. Schartner; John A. Udischas & Susan C. Udischas, h/w; Donna M. Bartko; Kyli J. Martin; Robert J. Grimm & Jana L. Phillis; Amy R. Solomon; Richard M. Buck & Barbara L. Buck, h/w; Arlene Lipton; William G. Eiler; Catherine M. Smith; Dawna M. Maydak; Mildred K. Fincke; Margaret M. Cornellius; Craig M. Drinkhall; Randi Burdick; Robert F. Milligan, Jr. & Marilyn R. Milligan, h/w; Ronald G. Bauer & Teresa L. Bauer, h/w; Anna Marie Cimarolli; Jor R. Palmer & Ann D. Palmer, h/w; John William Minnich; Joseph J. Astorino & Marilyn J. Astorino, h/w; Thomas S. Phillips; Catherine E. Tsai; Naomi H. Patton; Stanley A. Hack & Christine E. Hack, h/w; Michael L. Hynes & Janice M. Hynes, h/w; Thomas E. Darabant & Faye C. Floriani; William J. Garrity, Sr. & Patricia Ann Garrity, h/w; Archie L. McIntyre; Clarence Joseph

292

Welter & Mara Welter, h/w; Lisbeth A. Dineen; Charles W. Fetrow & Margaret A. Fetrow, h/w; Kathleen Lyon; Mark A. Petrozza & Dorothy M. Petrozza, h/w; John R. Zecchino, as their interest may appear.

Timothy P. O'Reilly

v.

(a) Hickory on the Green Homeowners Association, and (b) Mary Lou Sorbara; Gregory E. Burgunder; Ann E. Cain; Don E. Cottrill & Norma J. Cottrill, h/w; Joseph K. Cupples; Bart V. Delcimmuto; James D. Dragoo & Linda J. Dragoo, h/w; Kimberly M. Fonzi; Brian J. Gallagher & Diane J. Gallagher, h/w; Dolores M. Gembarosky; Michael J. Gralish, Jr. & Virginia A. Gralish, h/w; Diane M. Giuliana; Jeffery W. Hutchens; David B. Keith & Christina A. Keith, h/w; Joanne B. Kuchinic, Testamentary Trust; Harry J. Lee, Jr.; Jay A. Levy; S. Greg Malone; Joseph V. Mazur & Kelly L. Poole; Martin Mickey & Melissa G. Mickey, h/w; Regis G. Niederberger & Kathleen C. Niederberger, h/w; Gordon J. Orr; Anne M. Paul; Thomas G. Porter; Roseanne E. Petraglia; Eric H. Rittenhouse & Danielle L. Rittenhouse, h/w; John J. Sahlaney; Jerome Schmier & Carol Falo, h/w; John R. Shafer, Trustee or his successors in trust, under the John S. Shafer Living Trust, dated November 20, 2001, and Jessie M. Shafer, Trustee or her successors in trust, under the Jessie M. Shafer Living Trust, dated November 20, 2001; Marcus A Spatafore & Kristin C. Brazell; William E. Sprecher & Marcellene Sprecher h/w; and Frank J. Sprecher & Agnes E. Sprecher, h/w, Life Estate; Roxanne M. Squillante; Susan C. Stanko; Shanan R. Stewart; Richard H. Sweet & Marsha A. Sweet, h/w; Gregory Taylor; John M. Thomas; Thomas P. Wakim & Kimberly L. Wakim, h/w; Betty B. Williams & Leon I. Williams (Co–Trustees); Royce D. Vanderpool; Melissa J. Schiller & Melanie M. Schiller; Janet Zewe; Frank A. Bodnar; Karen R. Billingham; Bradford R. Jones; Virginia L. Knaus, Trustee Under Qualified Personal Residence Trust Agreement dated July 27, 2000; Joan L. Massella; Donna Durkan; Geraldine R. Altenhof; Elizabeth Beck; Darlene A. Taylor; James E. Spence & Kathy F. Spence, h/w; Lance D. Moller; Lindy M. McGee; the Judith F. Koblitz Trust; Richard E. McNutt & Helena A. McNutt, h/w; Dorothy D. Wagner; Spitzig Living Trust; Sandra H. O'Connell; Thomas C. Skena; Zaraf Moshin; Paul W. Amic & Carole L. Amic, h/w; Margaret M. Showalter; James P. Flannery & Patricia C. Flannery, h/w; Deborah A. Gertz; Carol L. Schartner; John A. Udischas Susan C. Udischas, h/w; Donna M. Bartko; Kyli J. Martin; Robert J. Grimm & Jana L. Phillis; Amy R. Solomon; Richard M. Buck & Barbara L. Buck, h/w; Arlene Lipton; William G. Eiler; Catherine M. Smith; Dawna M. Maydak; Mildred K. Fincke; Margaret M. Cornellius; Craig M. Drinkhall; Randi Burdick; Robert F. Milligan, Jr. & Marilyn R. Milligan, h/w; Ronald G. Bauer & Teresa L. Bauer, h/w; Anna Marie Cimarolli; Jor R. Palmer & Ann D. Palmer, h/w; John William Minnich; Joseph J. Astorino & Marilyn J. Astorino, h/w; Thomas S. Phillips; Catherine E. Tsai; Naomi H. Patton; Stanley A. Hack & Christine E. Hack, h/w; Michael L. Hynes & Janice M. Hynes, h/w; Thomas E. Darabant & Faye C. Floriani; William J. Garrity, Sr. & Patricia Ann Garrity, h/w; Ar-

chie L. McIntyre; Clarence Joseph Welter & Mara Welter, h/w; Lisbeth A. Dineen; Charles W. Fetrow & Margaret A. Fetrow, h/w; Kathleen Lyon; Mark A. Petrozza & Dorothy M. Petrozza, h/w; John R. Zecchino, as their interest may appear, Appellants.

Commonwealth Court of Pennsylvania.

Argued April 6, 2011.
Decided May 5, 2011.

Kevin P. Allen, Pittsburgh, for appellant Hickory on the Green Homeowner's Association.

William P. Bresnahan, Pittsburgh, for appellee Timothy P. O'Reilly.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY President Judge LEADBETTER.

This case, on remand from our Supreme Court, involves a challenge to the constitutionality of the Private Road Act (PRA).[1]

---

1. Act of June 13, 1836, P.L. 551, *as amended,* 36 P.S. §§ 2731–2891. The PRA provides a procedure by which a landlocked property owner can request the placement of a private road across the property of others. The property owner must first request that common pleas appoint a board of viewers, who then determine if a road is necessary, and if so, where it should be located. Sections 2 and 11 of the PRA, 36 P.S. §§ 1785, 2731. Owners of property traversed by a private road receive damages in the same manner as if

This case began when Timothy P. O'Reilly filed a Petition for the Appointment of a Board of Viewers pursuant to the PRA, for the purpose of creating a private road allowing access to a landlocked parcel he owns. The Hickory on the Green Homeowners Association (Association), along with numerous landowners and neighbors, filed preliminary objections to the petition, arguing that takings under the PRA were unconstitutional. The Court of Common Pleas of Allegheny County overruled the objections, stating that the constitutionality of the PRA was well established. This court granted an interlocutory appeal and, in an *en banc* opinion, affirmed. *See In re: Opening of Private Road for the Benefit of Timothy P. O'Reilly (O'Reilly I)*, 954 A.2d 57 (Pa.Cmwlth.2008). Our Supreme Court reversed and remanded for further review. *In re Opening Private Road for Benefit of O'Reilly (O'Reilly II)*, 607 Pa. 280, 5 A.3d 246 (2010). We now vacate the original common pleas opinion and remand for further proceedings.

As this appeal was taken after preliminary objections, the factual record is quite thin. O'Reilly's petition simply alleges that he owns a plot of land in South Fayette Township, Allegheny County, that is landlocked, and requested the appointment of a board of viewers to evaluate a proposed private road which would cross land owned by Mary Lou Sorbara and the Association. O'Reilly averred that Sorbara

had no objection to the proposed road. The Association, however, along with much of its membership in their capacity as landowners in the development, filed preliminary objections, arguing, among other things, that the Act authorized takings that were unconstitutional under both the United States and Pennsylvania constitutions, because they were for private, not public, use.[2] As noted above, common pleas overruled the objections, and this court granted an interlocutory appeal and affirmed.

In affirming, this court offered a number of reasons that takings under the PRA were constitutional. First, we cited a long line of cases, starting with *Waddell's Appeal*, 84 Pa. 90 (1877), affirming the constitutionality of the PRA. However, we noted that the constitutionality of the PRA had been called into question by several recent decisions of our Supreme Court. Specifically, in *Middletown Township v. Lands of Stone*, 595 Pa. 607, 939 A.2d 331 (2007), the Court stated that:

> "[A] taking will be seen as having a public purpose only where the public is to be the primary and paramount beneficiary of its exercise." *In re Bruce Ave.*, 438 Pa. 498, 266 A.2d 96, 99 (1970). In considering whether a primary public purpose was properly invoked, this Court has looked for the "real or fundamental purpose" behind a taking. *Belovsky v. Redevelopment Authority*, 357

their land had been seized for a public road, although compensation is paid by the landlocked property owner. Section 2 of the PRA, 36 P.S. § 2736.

2. Specifically, the Association cites to the Fifth Amendment of the United States Constitution, which states, in part, "nor shall private property be taken for public use, without just compensation," as well as Article I, Section I of the Pennsylvania Constitution, which provides:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Finally, the Association cites Article I, Section 10 of the Pennsylvania Constitution, which provides, in part: "nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."

Pa. 329, 54 A.2d 277, 283 (1947). Stated otherwise, the true purpose must primarily benefit the public.

*Id.* at 617, 939 A.2d at 337. In addition, a plurality of our Supreme Court, in *In re Forrester,* 575 Pa. 365, 836 A.2d 102 (2003), stated:

> The primary beneficiary of the opening of a private road is the private individual or entity who petitions for such relief. Granted, society as a whole may receive a collateral benefit when landlocked property may be accessed by motorized vehicles, and thus presumably be put to its highest economic use; yet, it cannot seriously be contended that the general population is the primary beneficiary of the opening of a road that is limited to the use of the person who petitioned for it. Thus, as the opening of a private road pursuant to the Act does not accomplish a public purpose, it cannot be seen as the exercise of the power of eminent domain.

*Id.* at 370–71, 836 A.2d at 106–07. In response to an argument made by the dissent, the *Forrester* plurality acknowledged that its holding might bring the constitutionality of the PRA into question, but declined to address the matter, saying it was not before the Court. *Id.* at 371, 836 A.2d at 106 n. 4.

This court acknowledged these recent cases, but nevertheless found two reasons to uphold the PRA. First, after reviewing an extensive history of land grants in Pennsylvania, including colonial history, the court concluded that all land in the state was burdened with a 6% incorporeal burden, subject to seizure for use as public or private highways. In the alternative, the court held that seizures under the PRA had a public purpose because

> [a]lthough the private property owner who petitioned for the private road certainly gains from the opening of the road, the public gains because otherwise inaccessible swaths of land in Pennsylvania would remain fallow and unproductive, whether to farm, timber or log for residences, making that land virtually worthless and not contributing to commerce or the tax base of this Commonwealth.

*O'Reilly I,* 954 A.2d at 72.

In reversing, our Supreme Court did not hold the PRA to be facially unconstitutional, but rather clarified the "public purpose" standard and remanded for further consideration of the pertinent facts under this standard. It began by noting that actions under the PRA are not exercises of the police power, but takings which are subject to the same constitutional restrictions as takings under eminent domain.

In addition, the Court emphasized that the applicable standard in this case was the one articulated in *Lands of Stone:* that takings must have a public purpose and that a public purpose exists only when the public is "the primary and paramount beneficiary" of the taking. *O'Reilly II,* 607 Pa. at 299–301, 5 A.3d at 258 [*citing Lands of Stone,* 595 Pa. at 617, 939 A.2d at 337].[3] The Court remanded for this court to consider whether, in this case, the public was the primary and paramount beneficiary. In remanding, our Supreme Court stated:

> Perhaps the most compelling assertions advanced by Appellee [O'Reilly] lie in the purported interrelation between the Commonwealth's initial exercise of its eminent domain power to construct an interstate highway-which apparently isolated Appellee's property from access to public roads-and Appellee's subsequent

---

**3.** It also rejected this court's conclusion that there existed an incorporeal burden on all property in the Commonwealth that was subject to seizure for road construction.

invocation of the PRA to restore access. In light of the course this appeal has taken, however, potentially relevant details (for example, whether Appellee's use of the PRA to restore access to the property was contemplated at the time the Commonwealth removed it, and whether Appellee acted with reasonable promptitude such that the two takings reasonably might be regarded as an interconnected course of events) are not well developed before this Court. Accordingly, we will return the matter to the Commonwealth Court to consider this and any remaining matters which have been raised and preserved for judicial review and which may bear on whether the public is fairly regarded as the primary and paramount beneficiary.

. . . .

We have concluded that the court of original appellate jurisdiction has the responsibility, in the first instance, to review Appellants' preserved and colorable arguments, and any decision to affirm the taking of their property should be closely reasoned.

*Id.,* 607 Pa. at 301–02, 5 A.3d at 258–59.

Back before this court, O'Reilly moved for a further remand to common pleas, for the purpose of supplementing the record with information related to the issues addressed by our Supreme Court above, specifically that it was the Commonwealth's seizure of land to build a highway that caused the parcel at issue to become landlocked, and the timeline of proceedings following that action. As it stands, the record is essentially bereft of information on these topics.[4] By *per curiam* order on

February 11, this court denied O'Reilly's motion and listed this case for argument *en banc.*

Before this court, both parties continue to dispute the constitutionality of the PRA. O'Reilly notes that our Supreme Court at no point declared the PRA unconstitutional and argues that, because he has fulfilled the PRA's statutory requirements, he should be allowed to proceed. He also cites the United States Supreme Court's decision in *Kelo v. City of New London,* 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005), in which the Supreme Court approved the condemnation of private property for transfer to another private owner, on the theory that it would spur development of a distressed municipality. In that case, the Supreme Court affirmed that takings must be for a public purpose, but it deferred to the state legislature's judgment as to what constitutes such a purpose.

O'Reilly argues that there are a number of indications that the General Assembly views the construction of private roads as serving a public purpose. First, of course, is the existence of the PRA itself. Second, O'Reilly points to the recently-enacted Property Rights Protection Act, 26 Pa.C.S. §§ 201–207, which bans the use of eminent domain for private purposes, with an explicit exception for condemnations for roads to landlocked properties. *See* 26 Pa.C.S. § 204(b)(9). This argument, however, while it may demonstrate that the PRA is compliant with the federal standard set out in *Kelo,* does nothing to show compliance with the more stringent standard in *Lands of Stone,* which our Su-

4. It is important to note that this case is an interlocutory appeal from preliminary objections, and therefore no factual findings have been made by common pleas. The pleadings before common pleas contain no reference to the highway or the timing issue. As these issues also do not appear in the briefs submitted to the Supreme Court, it is unclear how that court became aware of them. One possibility, of course, is that they were brought up in oral argument.

preme Court explicitly instructed this court to consider.

Addressing the *Lands of Stone* requirement that the public be the primary and paramount beneficiary, O'Reilly argues that the parcel became landlocked because of a condemnation to build a highway, and, if that condemnation is viewed as one transaction with his private road action, the public is the primary beneficiary. However, he acknowledges that no information about the highway condemnation is on the record.

The Association continues to argue that a straightforward application of *Lands of Stone,* as well as the general principal that private land cannot be seized for private use, requires that the PRA be found facially unconstitutional. The Association does not address why this court should make that determination when our Supreme Court, presented with the same question, declined to do so, and, instead remanded for consideration of the circumstances surrounding this case.[5]

Suffice it to say that we will follow our Supreme Court's explicit instructions on remand: to consider the constitutionality of the specific taking at issue in this case under the standard identified.

In examining the record, however, we are convinced that we do not have enough information to determine whether the public would be the primary and paramount beneficiary of the taking in this case. There are a number of reasons for this: this case is before us on appeal from preliminary objections, so there is no factual record; the parties' pleadings did not specifically address the standard that our Supreme Court has now made clear applies; and there is nothing even in the pleadings relating to the issue of the highway condemnation raised by our Supreme Court.

We therefore will remand this case to the court of common pleas to hold a hearing, make findings of fact, and consider these issues. At this hearing, the court should consider not only evidence presented by the parties about the alleged highway taking that caused the parcel at issue to become landlocked, but also any other evidence relevant to determining who the primary and paramount beneficiary of the proposed taking would be.[6]

Judge McGINLEY did not participate in the decision in this case.

### ORDER

AND NOW, this 5th day of May, 2011, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby VACATED, and this matter is REMANDED for further proceedings consistent with this opinion.

Jurisdiction relinquished.

---

5. In fact, our Supreme Court continues to hear and decide cases under the PRA, without addressing its constitutionality. *See In re Private Road in Speers Boro,* —— Pa. ——, 11 A.3d 902 (2011).

6. In addition, if it becomes necessary for the pleadings to be amended for this issue to be fully considered, such amendments should be allowed. We believe this is appropriate in light of the fact that the Act has long been held constitutional and, more to the point, our Supreme Court's opinion in this case was the first to suggest a case by case analysis of public purpose with respect to the opening of a *private* road.